UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| SIOUX STEEL COMPANY, A SOUTH DAKOTA CORPORATION;<br><br>Plaintiff,<br><br>vs.<br><br>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,<br><br>Defendants. | 4:19-CV-04156-KES<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL<br><br>DOCKET NO. 48 |

**INTRODUCTION**

This matter is pending on the complaint filed by plaintiff Sioux Steel Company ("Sioux Steel") against its insurance company, defendant the Insurance Company of the State of Pennsylvania ("ICSP"), regarding coverage under a policy of insurance issued by defendant to plaintiff. Docket No. 1. Jurisdiction is premised on the diversity of citizenship of the parties and an amount in controversy exceeding $75,000. See 28 U.S.C. § 1332.[1] Now pending is a motion to compel by ICSP, seeking documents withheld by Sioux Steel pursuant to assertions of the attorney-client privilege and the work product doctrine. See Docket No. 48. This motion was referred to this magistrate judge for a decision pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 57.11.

---

[1] Sioux Steel is alleged to be a South Dakota corporation with its principal place of business in South Dakota while ICSP is alleged to have its primary place of business in New York state. Docket No. 1 at p. 1.

## FACTS

Sioux Steel sold a hopper bin/silo (through an agent) to a Mexican enterprise, Agropecuaria El Avion ("Avion") to be used in Mexico.  On February 2, 2015, that hopper failed, killing two of Avion's employees and resulting in a loss of soybean meal.  Sioux Steel had previously purchased a foreign commercial general liability insurance policy from ICSP which included coverage in Mexico.

The day after the accident, February 3, 2015, Sioux Steel hired Liquid Communications as part of the company's crisis management.  Christopher Donahue was Sioux Steel's point person at Liquid Communications. Mr. Donahue is not a lawyer and Liquid Communications is not a law firm. Liquid Communications bills itself as a "strategic communications firm specialized in building, maintaining, and protecting trust."  Docket No. 59-1 at p. 2.  It appears that Liquid Communications' role, at least in part, was to engage in direct negotiations with the parties who experienced the losses in Mexico.  Id.  In that regard, Mr. Donahue made specific recommendations to Sioux Steel as to the use of delay in negotiating, the amount of settlement Mr. Donahue thought he could attain, and cultural issues impacting settlement.  Id.

Avion sought damages from Sioux Steel and Sioux Steel reported the loss to ICSP.  When Sioux Steel began investigating the accident, it identified a potential error in the design review by K.C. Engineering in the pre-manufacturing phase of the hopper's product development.  On July 30, 2015,

ICSP issued a reservation of rights letter questioning coverage under the policy with regard to an exclusion for work of engineers.  On August 27, 2015, Sioux Steel (represented by the same counsel as in this lawsuit) sued K.C. Engineering.  Sioux Steel Company v. K.C. Engineering, P.C., 4:15-CV-04136-KES, Docket No. 1 (D.S.D.).[2]  On September 15, 2015, ICSP denied the loss claim, citing the exclusion for work by engineers.

Sioux Steel paid the losses itself in the amount of $685,000 and then brought this suit against ICSP, alleging breach of contract, conversion, and bad faith denial of insurance coverage (common law and statutory). Docket No. 1.

On October 12, 2020, ICSP served Sioux Steel with 20 requests for the production of documents.  Docket No. 49-1.  In response to that discovery request, Sioux Steel asserted many of the documents were protected by either attorney-client privilege, the work-product doctrine, or both.  A privilege log was prepared by Sioux Steel and given to ICSP in March 2021.  Docket No. 49-2.

On August 2, 2022, ICSP served Mr. Donahue with a subpoena *duces tecum* seeking production of eight categories of documents from Mr. Donahue in connection with Liquid Communication's work for Sioux Steel.  Docket No. 49-3.  Although the subpoena required Mr. Donahue to provide the documents directly to ICSP, at Sioux Steel's direction the documents were provided first to Sioux Steel, which then refused to produce a number of those documents on

---

[2] The action against K.C. Engineering was dismissed on stipulation of the parties on January 28, 2019.  Sioux Steel, 4:15-CV-04136 at Docket No. 51.

the same grounds that it resisted discovery:  attorney-client privilege and work-product doctrine.  A privilege log was provided by Sioux Steel to ICSP on October 27, 2022, with regard to documents subpoenaed from Mr. Donahue. Docket No. 49-7.

On August 26, 2022, counsel for ICSP emailed Sioux Steel's counsel and noted that ICSP denied Sioux Steel's insurance claim on September 15, 2015. Docket No. 59-4 at p. 2.  ICSP expressed the view that documents predating denial of the claim could not be prepared in anticipation of litigation as required for the work product doctrine and, thus, should be discoverable.  Id. ICSP also noted that some documents included in the privilege log were sent to opposing counsel, the claimant, or ICSP's employee, so those documents could not be privileged, having previously been disclosed to an adversary.  Id. Finally, ICSP expressed the view that any documents involving communication with in-house counsel that relate to business matters, rather than legal matters, should not be privileged.  Id.

Counsel for Sioux Steel agreed to review the list of documents withheld and to revise if necessary.  Id. at p. 1.  The revised privilege log was not provided to ICSP until November 21, 2022, three weeks *after* the instant motion to compel was filed.  Docket No 56-14.

On August 30, 2022, the deposition of Amy Ellis, Sioux Steel's in-house counsel, was taken.  Docket No. 59-2.  Ms. Ellis testified that, after the loss occurred on February 2, 2015, she was tasked with contacting and hiring a "crisis communications" firm, facilitating communication, and finding

4

documents.  Id. at pp. 2, 11 (Ellis depo. p. 17, 47).  To that end, she hired

Liquid Communications to work specifically on this loss.  Id. at p. 3 (Ellis depo.

pp. 31-32).  Ms. Ellis testified Liquid Communications was not hired to provide

legal work or advice for Sioux Steel and that Mr. Donahue was not an attorney.

Id. at p. 10 (Ellis depo. at pp. 39-40).

Ms. Ellis's role as the contract, in-house counsel for Sioux Steel did not

involve determining legal liability, determining insurance coverage, assessing

potential damages, or providing any legal advice to Sioux Steel with respect to

the February 2, 2015, claims arising in Mexico.  Id. at p. 11 (Ellis depo. at

pp. 47-48).  Outside counsel from Texas was hired by Sioux Steel to assist with

the settlement of the claims from Mexico.  Id.  Ms. Ellis was not involved in

negotiating the settlement of those claims.  Id. at p. 12 (Ellis depo. at p. 52).

On October 28, 2022, Sioux Steel provided ICSP with a privilege log with

regard to the documents it had received from Mr. Donohue pursuant to ICSP's

subpoena *duces tecum* and over which Sioux Steel was asserting privilege.

Docket No. 49-7.

ICSP immediately sent an email to Sioux Steel that same day questioning

how documents exchanged with Liquid Communications could be protected by

the attorney-client privilege when neither Liquid Communications nor

Christopher Donahue were lawyers and neither of them were Sioux Steel's

client.  Docket No. 59-6.  ICSP noted it had the same objection to the list of

documents to and from Donohue which Sioux Steel withheld from its discovery

requests.  Id.  Counsel asked to hear back from Sioux Steel that afternoon or a

5

motion to compel would be filed.  Id.  A telephone conversation was had between counsel for ICSP and counsel for Sioux Steel regarding the documents withheld on October 27, 2022.  Docket No. 59 at p. 2.  The parties did not resolve the issue.  The discovery deadline set by the district court was October 31, 2022.  Docket No. 47.

ICSP now moves to compel Sioux Steel to provide the documents withheld pursuant to attorney-client privilege or work-product doctrine. Docket No. 48.  Sioux Steel resists the motion.  Docket No. 55.

## DISCUSSION

### A.    Meet and Confer Prerequisite

Both Federal Rule of Civil Procedure 37 and our court's local rules require the parties to meet and confer over discovery disputes in a good faith attempt to resolve those disputes before filing a motion to compel.  Fed. R. Civ. P. 37(a)(1); DSD LR 37.1.  Sioux Steel asserts ICSP's efforts in this regard were deficient.

The two issues presented by ICSP's motion to compel are:  (1) can documents exchanged between Ms. Ellis and Mr. Donahue at Liquid Communications be protected by the attorney-client privilege; and (2) whether documents prepared prior to September 15, 2015, fall within the purview of the work-product doctrine.  Those two issues were discussed by the parties in their communications.

Sioux Steel complains that it is unreasonable ICSP demanded to resolve the attorney-client privilege issues within 48 hours or a motion to compel

would be filed.  But the court notes the Donahue documents were subpoenaed months earlier and Sioux Steel prevented the disclosure of those documents to ICSP.  ICSP did not learn until the deposition of attorney Ellis on August 30 that neither Mr. Donahue nor his firm were lawyers or that Ellis provided no legal advice with regard to the February 2, 2015, event.  Further, Sioux Steel did not provide its privilege log for the Donahue documents until October 27, 2022.  The discovery deadline was only four days hence at that point.  That did not leave ICSP a lot of time to try to resolve the issue.

The pertinent issues were raised and discussed.  Given the time frame involved, the court finds that, under the circumstances of this case, ICSP has satisfied the meet and confer requirement.

**B.     Attorney-Client Privilege**

State law determines both the existence and scope of the attorney-client privilege in diversity actions.  Fed. R. Evid. 501; Gray v. Bicknell, 86 F.3d 1472, 1482 (8th Cir. 1996).  Since this court has jurisdiction over the parties solely by reason of diversity of citizenship of the parties, 28 U.S.C. § 1332, the state law of privilege applies to the issue of whether the statement was privileged and whether that privilege has been waived.  Id.

Under South Dakota law, a "client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client" if the communications are between himself or his representative and his lawyer or his lawyer's representative, among others.  SDCL § 19-19-

7

502(b).  A "client" is defined as "a person . . . who is rendered professional legal services by a lawyer, or who consults with a lawyer with a view to obtaining professional legal services from him."  SDCL § 19-19-502(a)(1).  A "lawyer" is defined as "a person authorized . . . to engage in the practice of law in any state or nation."  SDCL § 19-19-502(a)(3).

Here, neither Mr. Donahue nor his firm, Liquid Communications, are lawyers.  It is also clear they are not a client within the meaning of the attorney-client privilege.  There is no indication that Mr. Donahue or his firm ever sought legal advice from Ms. Ellis.  She testified she was not called upon to render any legal advice regarding the February 2, 2015, event.

Sioux Steel argues that the privilege extends to agents of the lawyer and that Liquid Communications was hired as Sioux Steel's agent.  Docket No. 55. This is true, as revealed in the definitions section of the South Dakota statute discussed above.  South Dakota law defines a "representative of a lawyer" as "one employed by the lawyer to assist the lawyer in the rendition of professional legal services."  SDCL § 19-19-502(a)(4).  Under this theory, then, Christopher Donahue would have been retained by Ms. Ellis as her agent to "assist [Ms. Ellis] in the rendition of professional legal services."  But, as Ms. Ellis testified, she did not render any professional legal services to her client, Sioux Steel.  She testified she was not called upon to give any legal advice regarding the February 2, 2015 event.

The Upjohn case, cited by Sioux Steel, is unavailing.  In that case, a drug manufacturer, Upjohn Company, tasked its general counsel with conducting

an investigation regarding whether any of the company's employees had made possibly illegal payments to foreign government officials.  Upjohn Co. v. United States, 449 U.S. 383, 387 (1981).  A letter from the company's Chairman of the Board was sent to all foreign general and area managers asking those managers to share information with the company's attorney and to treat the matter as "highly confidential."  Id.  The Internal Revenue Service initiated an investigation and sought disclosure of the questionnaires sent to Upjohn's managers.  Id. at 388.  Upjohn refused to produce the documents, asserting they were protected by the attorney-client privilege.  Id.  The court upheld Upjohn's assertion of the privilege under the facts presented.  Id. at 397.

In Upjohn, the general counsel was indeed providing legal advice to his client, Upjohn.  The lawyer was tasked with investigating potential illegal payments that could land the company in legal trouble and advising the company what steps to take in the event it was determined illegal payments had indeed been made.  The employees who were queried via the letter provided the information to the company's lawyer for the purpose of enabling that lawyer to provide legal advice to his client, Upjohn.

Here, nothing of the sort took place.  Ms. Ellis was not tasked with investigating the February 2, 2015, event or providing her client, Sioux Steel, with legal advice regarding this event.  She was not gathering information from Sioux Steel employees in order that she could render legal advice.  Nor was she gathering information from Mr. Donahue or Liquid Communications in order to enable her to render legal advice.

9

Ms. Ellis is indeed a lawyer.  But she did not hire Liquid Communications to aid her in gathering information so as to render legal advice.  She was quite clear that she was not called upon to give any legal advice in connection with the February 2, 2015, event.  Mr. Donahue, for his part, appears to have been hired as a professional negotiator to attempt to obtain the best settlement possible for Sioux Steel using his expertise in negotiating and his specific knowledge of the culture in Mexico.  Docket No. 59-1.

It may have made smart business sense for Sioux Steel to hire Liquid Communications.  But, at bottom, it was a business decision, a decision to save money, not a legal decision premised on legal advice.  Running Liquid Communications' emails through Sioux Steel's in-house attorney did not magically convert those communications into facts given for the purpose of rendering legal advice within the meaning of SDCL § 19-19-502.  The court holds that the attorney-client privilege does not provide a shield for the requested discovery.

## C.      **Work Product Doctrine**

When jurisdiction over a case rests on diversity jurisdiction, although *state privilege law* applies as to an assertion of attorney-client privilege, *federal law* governs the assertion of work product doctrine as a barrier to discovery. PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002); Baker v. General Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000) (*en banc*). The work product doctrine was first established in Hickman v. Taylor, 329 U.S.

495 (1947).  The court established the rule to prevent "unwarranted inquiries into the files and mental impressions of an attorney."

Rule 26 of the Federal Rules of Civil Procedure codifies the work product doctrine in federal courts:

> (b)(3)  **_Trial Preparation:  Materials._**
>
> (A)  _Documents and Tangible Things._  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:
>
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>>
>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> \* \* \* \*
>
> (5)  **_Claiming Privilege or Protecting Trial-Preparation Materials._**
>
> (A) _Information Withheld._  When a party withholds information otherwise discoverable by claiming that the information is . . . subject to protection as trial-preparation material, the party must:
>
>> (i) expressly make the claim; and
>>
>> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(3)(A) & (5)(A).

Work product falls into two categories:  "ordinary" and "opinion."

Baker, 209 F.3d at 1054.  Ordinary work product includes raw factual

11

information.  Id.  Opinion work product involves an attorney's "mental impressions, conclusions, opinions or legal theories."  Id.

A party seeking discovery of ordinary work product may overcome the doctrine by showing they have a substantial need for the materials and they cannot obtain the materials or their substantial equivalent by other means.  Id.  Opinion work product, however, enjoys almost total immunity; it can be discovered only in "very rare and extraordinary circumstances" as when the "attorney engaged in illegal conduct or fraud."  Id.

The party resisting discovery must show that the materials were prepared in anticipation of litigation.  PepsiCo, Inc., 305 F.3d at 817; FED. R. CIV. P. 26(b)(5)(A).  Furthermore, that same party must "describe the nature of the documents, communications, or tangible things not produced or disclosed" with sufficient detail to "enable other parties to assess the claim."  See FED. R. CIV. P. 26(b)(5)(A).

The application of the work product doctrine is highly fact-intensive and depends on the circumstances of the particular case. Regents of the Univ. of Minn. V. United States, 340 F.R.D. 293, 304 (D. Minn. 2021).  The crux of the doctrine, as articulated by the Eighth Circuit, is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987).  However,

documents prepared in the normal course of business are not protected if not prepared in anticipation of litigation. Id.

The parties' correspondence indicates a heavy reliance on dates: was the document prepared before or after a certain date, such as the date ICSP denied coverage. But as discussed above, that date is not determinative. The only real date that is determinative is February 2, 2015. There were three lawsuits that arose out of the events of that date: (1) the claims by the persons who experienced loss in Mexico, (2) the claim by Sioux Steel against K.C. Engineering for its allegedly faulty engineering work, and (3) the instant litigation over the meaning and scope of the insurance policy issued by ICSP to Sioux Steel. Documents could conceivably be within the attorney work product doctrine that were created from February 2, 2015, to the present. What is key is whether the document was prepared in anticipation of litigation.

Here, the privilege logs provided by Sioux Steel are wholly inadequate to allow the court to assess its claim of work product protection. Sioux Steel provided a 28-page single-spaced privilege log for all the documents withheld in connection with ICSP's request for the production of documents. Docket No. 49-2. It identifies documents by date and BATES number, author and recipient, and indicates the document is an email. Id. A supplemental privilege log provided to ICSP after the instant motion to compel was filed is similarly bereft of meaningful information. Docket No. 54-14 at pp. 3-29.

The descriptions in Sioux Steel's privilege logs do nothing to allow the court to determine whether the document is protected by the work product doctrine.  What was the general subject of the communication?  Was it opinion or factual?  Was it even discussing litigation?  The descriptions in the privilege log for documents from Mr. Donahue which were withheld is similarly lacking.  See Docket No. 49-7.

ICSP argues that documents prepared in anticipation of the Avion litigation or the K.C. Engineering litigation are not protected by the work product doctrine for purposes of *this* litigation.  Sioux Steel argues ICSP has waived this argument because it did not cite supporting authority.  But the court need not resolve the issue because Sioux Steel has failed to provide enough information for the court to ascertain whether any of the withheld documents were prepared in anticipation of *any* litigation.

ICSP argues that Liquid Communications was a mere public relations firm and, therefore, its communications with Sioux Steel cannot be protected by the attorney work product doctrine.  Sioux Steel counters that it hired Liquid Communications specifically because of the accident so its communications are self-evidently work product.  Neither party is correct.  The documents must have been prepared in anticipation of litigation.  It is Sioux Steel's burden to show that.  The privilege logs prepared by Sioux Steel do not satisfy its burden.

The scope of discovery is broad, encompassing "any nonprivileged matter that is relevant to any party's claim or defense . . ."  Fed. R. Civ.

14

P. 26(b)(2).  A party resisting discovery on the basis of work product doctrine has the burden of demonstrating sufficient facts so that the requesting party and this court can determine the applicability of the doctrine to the discovery at issue.  Regents of the Univ. of Minn., 340 F.R.D. at 304; Fed. R. Civ. P. 26(b)(5)(A).  Here, the logs provided by Sioux Steel do not allow the court to perform the requisite analysis. Accordingly, the court will grant ICSP's motion to compel.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends that ICSP's motion to compel [Docket No. 48] be granted in full.  Sioux Steel had three opportunities--initially, at the meet and confer, and then again in responding to ICSP's motion--to establish sufficient facts to demonstrate some privilege preventing discovery exists.  It failed to do so.  All documents covered by this order must be produced by Sioux Steel no later than 15 days after the date of this order.  If appropriate, Sioux Steel may produce the documents pursuant to the protective order previously entered by the court.  See Docket No. 27.

ICSP's motion also seeks relief from the district court's scheduling order in order to depose Christopher Donahue after receipt of the documents compelled by this order.  That is a matter left to the district court's discretion.  Accordingly, whether to allow an extension of the

discovery deadline and, if so, for how long, is left for the district court to determine.

### NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 6th day of December, 2022.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

16